UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEVIN NAUSS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:20-CV-00304 JAR |
| | ) |
| SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM AND ORDER

Plaintiff filed this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 (a)(1)(B), to overturn a denial of short-term disability benefits under Charter Communications, Inc. ("Charter")'s Welfare Benefit Plan ("the Plan"), which it self-funds and independently administers. Plaintiff also asks the Court to impose a discretionary penalty on Sedgwick for allegedly belatedly providing certain Plan documents requested by his counsel. This matter is before the Court on Defendant Sedgwick Claims Management Services, Inc. ("Sedgwick")'s Motion for Summary Judgment. (Doc. No. 30). The motion is fully briefed and ready for disposition. For the following reasons, the Court will grant summary judgment in favor of Sedgwick.

**Background**

As the "Plan Administrator" of the Plan, Charter delegates authority to make benefit determinations to independent "claims administrators." (R-01516). Under the Plan, "[b]enefits will be paid … only if the Claims Administrator (or the Administrator) determines in its discretion that the applicant is entitled to them. Except as otherwise provided by applicable law, decisions made by the Claims Administrator (or the Administrator) are final and binding."

– 1 –

(R-01517)[1]. Sedgwick is the Claims Administrator and the claims fiduciary with "sole authority" to determine benefit claims under the Plan. (R-1528, R-1564).

The Plan includes a Short-Term Disability ("STD") program that provides up to 26 weeks of benefits to eligible employees. To qualify for STD benefits under the Plan, a claimant must be "totally disabled," i.e., unable to "perform the Essential Duties of your own occupation." (R-01559). "Essential Duty" means "the important tasks, functions and operations generally required by employers from those engaged in their usual occupation that cannot be reasonably omitted or modified." (R-01577).

Charter is a telecommunications company that provides cable, television, telephone, and internet services to customers throughout the United States. Plaintiff worked as a Systems Analyst for Charter from November 2017 to October 8, 2019 and was a participant in the Plan. His essential job functions included documenting systems requirements, assessing and explaining impacts of systems changes or outages, maintaining a library of systems and technical specifications, and interfacing with business analysts and technical support personnel.

In April 2019, Plaintiff was experiencing gastrointestinal problems. On April 8, 2019, he applied for benefits under the STD program and submitted medical documentation in support of his claim. On May 2, 2019, Sedgwick denied Plaintiff's claim because he did not meet the Short-Term Disability Program's definition of "totally disabled." (R-00891 to R-00897). The determination to deny benefits was based on the absence of abnormal exam findings such as noted abdominal pain with guarding that would prevent Plaintiff from performing his sedentary job demands. (R-00893). In addition, no functional limitations were noted that would prevent Plaintiff from sitting for long periods of time. (Id.). According to the medical documentation, Plaintiff has been treated for irritable bowel syndrome ("IBS") with abdominal pain and gastric

---

[1] The administrative record created during the claims process is referenced herein as "R-".

erosion since 2017, with no indication of any change rendering him unable to work. (Id.). Lastly, Plaintiff's treatment plan, consisting of "labs and medication," is not alone disabling. (Id.).

Sedgwick advised Plaintiff by letter that he could appeal the decision and that it would consider any additional information submitted in support of his claim, including missing documentation from recent healthcare provider visits. (Id.). The letter attached an appeal form and a document explaining Sedgwick's appeal procedures. (R-00895 to R-00897). On May 3, 2019, Plaintiff informed Sedgwick by email that he would appeal Sedgwick's benefit determination. (R-00886).

On May 9, 2019, Plaintiff requested through counsel "a copy of the Short-Term Disability Policy or at least the Summary Plan Description of it." (R-00863). Sedgwick responded on May 14, 2019, attaching a copy of the 2017 Summary Plan Description for the Short-Term Disability Program.[2]

On May 13, 2019, Plaintiff's primary attending physician, Dr. Mark Novack, wrote a note stating:

> This man has chronic abdominal pain associated with poor control of defecation. He is under the care of a psychiatrist and a gastroenterologist. He has been unable to work since 4/5/2019 and will not be able to return to work through the end of July, 2019.

(R-00205).

On May 16, 2019, Plaintiff's treating physician psychiatrist, Dr. J. Paul Rutledge, completed an attending physician statement excusing Plaintiff from work from April 5, 2019 to July 31, 2019. Dr. Rutledge noted Plaintiff's gastrointestinal symptoms and diagnosed him with post-traumatic stress disorder, gastric ulcers with bleeding, and IBS with diarrhea. He further

---

[2] This Summary Plan Description was no longer in effect at the time of Plaintiff's alleged disability on April 5, 2019; a January 1, 2019 Summary Plan Description was provided to Plaintiff in April 2020, after he filed the instant lawsuit.

observed that Plaintiff appeared restless, anxious, depressed, and unable to concentrate, and opined that Plaintiff would be unable to stay on task without interruption due to his gastrointestinal symptoms and episodic anxiety. (R-00202 to R-00204).

On May 17, 2019, Plaintiff's counsel submitted 328 pages of medical records to Sedgwick for review, including the physician statements from Drs. Novack and Rutledge. (R-00847 to R-00849; R-01008 to R-01347). Thereafter, on June 3, 2019, Plaintiff's counsel emailed Sedgwick advising that he would not be submitting any additional information and that Sedgwick could proceed in evaluating Plaintiff's appeal. (R-00115).

Sedgwick commissioned a board-certified gastroenterologist, Dr. Muhammad Khokhar, and a board-certified psychiatrist, Dr. Mark Schroeder, to conduct an independent review of the record to determine whether Plaintiff was disabled. Dr. Khokhar reviewed Plaintiff's medical documentation and noted his several unsuccessful attempts to make contact with Dr. Novak and Plaintiff's gastroenterologist Dr. Ghadah Ismail. Dr. Khokhar ultimately determined that a gastroenterological impairment was not supported by the clinical evidence for the time frame of April 5, 2019 through Plaintiff's return to work. He noted that Plaintiff appeared to have abdominal pain and diarrhea secondary to IBS, but that the diarrhea had improved with Welchol and that several other medications were used to control abdominal pain. (R-00021 to R-00025). Dr. Khokhar also noted that Plaintiff's documented pain was not severe enough to cause a functional impairment and single gastric erosion cannot cause functional impairment. (Id.). Lastly, Dr. Khokhar observed that while Plaintiff had fatty liver disease, his blood tests were normal and thus did not support a finding of functional impairment. (Id.).

Dr. Schroeder also reviewed Plaintiff's medical documentation, held a teleconference with Dr. Novack, and noted his several unsuccessful attempts to make contact with Dr. Rutledge. Dr. Schroeder ultimately determined that a psychiatric impairment was not supported by the

medical record for the same time frame since the records "did not describe severe mental status abnormalities." (R-00013 to R-00020). He acknowledged Dr. Rutledge's observations of Plaintiff's affect and opinion that Plaintiff would not be able to stay on task due to his symptoms but noted the absence of detailed clinical information suggesting cognitive issues or "severe and widespread abnormalities" or referral to a higher level of care such as a partial hospital program that one would expect to see in a case of "severe psychiatric impairment." Dr. Schroeder disagreed with Dr. Rutledge's diagnosis of post-traumatic stress disorder because there was no evidence beyond Plaintiff's gastrointestinal symptoms to support that diagnosis. Dr. Schroeder also disagreed with Dr. Rutledge's assessment that Plaintiff was unable to work due to anxiety, depression, and gastrointestinal problems, concluding that the evidence did not establish that Plaintiff was impaired from performing the regular duties of his job. The teleconference with Dr. Novack did not change Dr. Schroeder's assessment because Dr. Novack said he was only supporting medical leave, not psychiatric disability leave. (Id.).

On June 17, 2019, Sedgwick mailed the independent physician advisor reports of Drs. Khokhar and Schroeder to Plaintiff with a letter explaining it would take those reports into consideration in determining his appeal. In addition, Sedgwick explained it would consider any further information submitted and allow Plaintiff additional time to submit that information if he so chose. (R-00026 to 00028). Sedgwick sent the same letter and independent physician reports to Plaintiff's counsel on July 8, 2019 and noted an August 10, 2019 deadline to render a decision. (R-01357). Plaintiff's counsel did not send any additional information to Sedgwick.

On July 26, 2019, Sedgwick emailed Plaintiff a letter informing him that it had upheld the denial of his STD benefits claim because he did not meet the Short-Term Disability Program's definition of "totally disabled." In its letter, Sedgwick referenced the plan provisions on which it based its decision, listed the various documents Sedgwick reviewed in Plaintiff's

medical record, and summarized the findings of the two independent physician advisors. Sedgwick also noted that Plaintiff submitted no additional documents for review after receiving the independent physician reports. (R-01350, R-00004 to R-00009). Plaintiff admits receiving Sedgwick's email and denial letter but alleges the email was routed to his email spam filter and discovered only after he filed his complaint.

The parties dispute whether and when Plaintiff's counsel was informed of Sedgwick's claim denial. Sedgwick maintains it contacted Plaintiff's counsel by phone on July 29, 2019 to inform him of its claims decision and that Plaintiff's counsel advised he would be filing suit. (R-01349). Plaintiff asserts that Sedgwick's agent informed his counsel it was considering denying Plaintiff's appeal, and that his counsel requested that in the event of a denial, the written denial be sent to him. Plaintiff's counsel then emailed Sedgwick on September 18, 2019 to inquire about the status of a decision on Plaintiff's appeal for STD benefits (R-00002) but according to Plaintiff never received a response. Plaintiff filed this action on February 24, 2020.

**Legal standard**

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988).  If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988).

**ERISA standard of review**

As a threshold matter, the parties disagree on the standard of review this Court is to apply in reviewing Sedgwick's benefit determination. Generally, a plan administrator's decision to deny benefits is reviewed de novo. Roebuck v. USAble Life, 992 F.3d 732, 736 (8th Cir. 2021) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). Under de novo review, no deference is given to the administrator's decision. Davidson v. Prudential Ins. Co. of Am., 953 F.2d 1093, 1095 (8th Cir. 1992). If, however, an ERISA plan expressly grants discretionary authority to the administrator or fiduciary to make benefits determinations and interpret plan terms, the Court reviews the administrator's benefits determination for an abuse of discretion. Roebuck, 992 F.3d at 736; see also Cooper v. Metro. Life Ins. Co., 862 F.3d 654, 660 (8th Cir. 2017) (same).

When reviewing for abuse of discretion, the Court will uphold the administrator's decision if it is reasonable, meaning it is supported by substantial evidence. See Green v. Union Security Ins. Co., 646 F.3d 1042, 1050 (8th Cir. 2011) (quoting Midgett v. Wash. Group Int'l Long Term Disability Plan, 561 F.3d 887, 893 (8th Cir. 2009)). "Substantial evidence is more than a scintilla but less than a preponderance." Id. A decision is reasonable "if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." Cooper, 862 F.3d at 660 (emphasis in original) (citation and quotation omitted).

Here, the Plan confers discretionary authority on the Claims Administrator, in this case Sedgwick, to determine benefit claims under the terms of the STD Program, (R-01517, R-01528, R-01564), which ordinarily invokes the abuse of discretion standard. See Phillips v. Charter Commc'ns, Inc. Welfare Benefit Plan, No. 4:18-CV-686, 2019 WL 1001553, at *4 (E.D. Mo. Feb. 28, 2019) (finding identical language triggered abuse of discretion review of

Sedgwick's benefit determination under Charter's STD program). Plaintiff argues Sedgwick has "forfeited" abuse-of-discretion review because (1) it sent an outdated Summary Plan Description to Plaintiff's counsel in May 2019; and (2) failed to properly deliver its claim denial letter. (Doc. No. 39 at 10). Plaintiff cites Fessenden v. Reliance Standard Life Ins. Co., 927 F. 3d 998, 999-1000 (7th Cir. 2019), in support of his position that the failure of a plan administrator to follow required claims procedures – such as deadlines for issuing decisions – triggers de novo review.

Under controlling Eighth Circuit caselaw, "the mere presence of a procedural irregularity is not enough to strip a plan administrator of the deferential standard of review." Menz v. Procter & Gamble Health Care Plan, 520 F.3d 865, 869 (8th Cir. 2008) (quoting McGarrah v. Hartford Life Ins. Co., 234 F.3d 1026, 1031 (8th Cir. 2000)). A procedural irregularity only triggers de novo review when the administrator wholly fails "to act on an appeal" and that failure "raises serious doubts about the result reached by the plan administrator" in its initial denial. McIntyre v. Reliance Standard Life Ins. Co., 972 F.3d 955, 963-65 (8th Cir. 2020) (citation omitted). See also Neumann v. AT & T Commc'ns, Inc., 376 F.3d 773, 781 (8th Cir. 2004). (A less deferential standard is only warranted when a beneficiary shows that the plan administrator, "in the exercise of its power, acted dishonestly, acted from an improper motive, or failed to use judgment in reaching its decision."); Buttram v. Cent. States, Se. & Sw. Areas Health & Welfare Fund, 76 F.3d 896, 901 (8th Cir. 1996) ("[I]t is not the existence of procedural irregularities per se that will cause a court to employ a heightened standard of review when evaluating a plan administrator's decision. Rather, those irregularities must have some connection to the substantive decision reached, i.e., they must cause the actual decision to be a breach of the plan trustee's fiduciary obligations.").

Here, Plaintiff points to Sedgwick's failure to provide him with the current SPD but does not identify any relevant changes between the SPD he was initially sent and the current SPD subsequently provided to him, or explain how this affected the substantive decision reached. Menz, 520 F.3d at 869; Wade v. Aetna Life Ins. Co., 684 F.3d 1360 (8th Cir. 2012) (abuse of discretion, rather than de novo standard of review, applied despite former employee's contention that the plan administrator failed to provide former employee's attorney the operative plan documents for over two years, and later introduced the correct documents to the district court, where the alleged procedural irregularities had no connection to the substantive decision reached).

As for Plaintiff's contention that Sedgwick failed to "adequately and properly" deliver its denial letter to him, the Court previously noted that Plaintiff's allegations that a notice of denial, dated "July 25, 2019," was e-mailed to him the following day, "July 26, 2019," but that "he was not aware of it" because "it had been delivered to his Spam Email," (Am. Compl. at ¶¶ 11-15), appear to concede that a timely denial was made. (Doc. No. 29 at 4). The fact that Sedgewick's denial letter was routed to Plaintiff's spam folder is not indicative of a "wholesale failure to act" or raises "serious doubts" about Sedgewick's claims determination. McIntyre, 972 F.3d at 965.

Under ERISA, adequate notice in writing must be provided to any participant whose benefit claim has been denied. 29 U.S.C. § 1133(1). The purpose behind § 1133 is to ensure that claimants receive adequate notice of denial of benefits and have a full and fair opportunity to present their case to the plan administrator. Edens v. Cent. Benefits Nat. Life Ins. Co., 900 F. Supp. 928, 932 (W.D. Tenn. 1995). Here, the purpose of the statute was satisfied. Plaintiff clearly received adequate notice of the denial of benefits and pursued his appeal of Sedgwick's decision. Since Plaintiff has presented no evidence indicating that Sedgwick's alleged violations

of § 1133 precluded him from fully pursuing his appeal, there is no basis in this case for raising the standard of review from abuse of discretion to de novo. C.f. VanderKlok v. Provident Life and Accident Ins. Co., Inc., 956 F.2d 610 (6th Cir. 1992), where the defendant insurer sent plaintiff's initial denial notice to an incorrect address, and the notice was never forwarded to the plaintiff. Because the plaintiff had no notice that his claim was denied, the Sixth Circuit found he had been deprived of the opportunity to present his claim during the administrative appeal, and thus remanded the case to the district court for a de novo review of the record. Here, the Court finds there are no procedural irregularities and, therefore, the abuse of discretion standard applies.

**Discussion**

Sedgwick argues that based on the record before it, its determination that Plaintiff could perform the "essential duties" of his job as a Systems Analyst for Charter was reasonable and supported by substantial evidence. Sedgwick further argues its benefit determination was proper even under de novo review. Based on its review of the record, the Court agrees. Sedgwick properly considered all medical records, and other information submitted by Plaintiff and his physicians. On appeal of its initial decision, Sedgwick consulted two neutral, independent doctors – with the same specialties as Plaintiff's treating physicians – to review the record and make a recommendation and gave Plaintiff's physicians an opportunity to respond. This evidence substantially supports Sedgwick's determination.

Plaintiff's treatment notes indicated that his abdominal pain and diarrhea secondary to IBS had improved with diet and medication. Blood tests and stool studies were unremarkable, as were CT scans of the abdomen and pelvis, including the bowel, with no acute findings. A stomach biopsy revealed mild chronic inflammation and reactive gastropathy with focal erosion; a colon biopsy revealed no histopathologic abnormality and no evidence of

lymphocytic or collagenous colitis. In short, nothing about Plaintiff's treatment notes suggested any type of gastroenterological impairment of disabling severity. Likewise, Plaintiff's treatment records did not document severe mental status abnormalities or referrals to a higher level of psychiatric care and lacked clinical evidence supporting a diagnosis of post-traumatic stress disorder.

Two independent physician advisors reviewed the full medical record and determined that a disabling gastroenterological or psychiatric impairment was not supported from April 5, 2019 through Plaintiff's return to work. As to the gastroenterological finding, Dr. Khokhar pointed to treatment notes indicating that Plaintiff's gastrointestinal issues had improved with diet and medication and noted that single gastric erosion cannot cause functional impairment. As to the psychiatric finding, Dr. Schroeder noted the absence of detailed clinical information suggesting cognitive issues, "severe and widespread abnormalities," or referral to a higher level of care, as well as the lack of specific examples of psychiatric impairment on Plaintiff's daily life.

In opposition to Sedgwick's motion, Plaintiff argues that Sedgwick interpreted the relevant terms of the Plan inconsistently and contradicted the Plan's clear language (Doc. No. 39 at 11) yet does not identify any inconsistency or facts in support of his contention. Plaintiff further argues that Sedgwick used its own "hired gun" physicians and disregarded the opinions of his two treating physicians. However, treating physician opinions are not accorded greater weight than reviewing physician opinions in ERISA claims. When a claims administrator is confronted with conflicting medical opinions, denial of benefits is not an abuse of discretion. See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003) ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of

explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."); see also Zaeske v. Liberty Life Assurance Co. of Bos., 901 F.3d 944, 950 (8th Cir. 2018) (citations omitted) ("As a general rule, a plan administrator has discretion to choose between two reliable but conflicting medical opinions … A plan administrator may even prefer the opinion of its own consulting physician over that of an applicant's treating physician."); Cooper v. Metro. Life Ins. Co., 862 F.3d 654, 662 (8th Cir. 2017) (same); Whitley v. Standard Ins. Co., 815 F.3d 1134, 1142 (8th Cir. 2016) (holding that a plan administrator "was not required to give special deference to the opinions of [claimant's] treating physicians") (citing Black & Decker, 538 U.S. at 825); Anyanwu v. Ascension Health, No. 4:17-CV-02722-NCC, 2019 WL 2211057, at *17 (E.D. Mo. May 22, 2019).

Furthermore, both reviewing physicians attempted to contact Plaintiff's treating physicians, gastroenterologist Dr. Ismail and psychiatrist Dr. Rutledge, four times by sending faxes and leaving voicemail messages, prior to rendering their opinions. (R-00015, R-00022). The Court finds it was particularly appropriate for Sedgwick to rely on the independent physician advisors considering the lack of participation by Plaintiff's treating physicians in the appeals process. See Cooper, 862 F.3d at 659 (taking note of treating physicians' failure to respond to independent reviewers in affirming denial of benefits).

Lastly, Sedgwick asserts it cannot be penalized for its response to Plaintiff's request for Plan documents because the requirement to provide plan documents applies only to plan administrators, not claims administrators like Sedgwick. See Ibson v. United Healthcare Servs., Inc., 877 F.3d 384, 390 (8th Cir. 2017); Dunivin v. Life Ins. Co. of N. Am., No. 4:17CV1530 HEA, 2018 WL 1455861, at *2 (E.D. Mo. Mar. 23, 2018). Section 1132(c) authorizes the district court to impose statutory penalties upon a plan administrator if the plan administrator "fails or refuses to comply with a request for any information which such administrator is

required by this subchapter to furnish to a participant." 29 U.S.C. § 1132(c)(1)(B). Plaintiff cites no authority to the contrary. In any event, his timely administrative appeal and commencement of this action indicate that no prejudice resulted from initially receiving an outdated SPD.

**Conclusion**

This Court's duty is to determine whether Sedgwick's decision was supported by substantial evidence, not to weigh the evidence anew. See Green v. Union Sec. Ins. Co., 646 F.3d 1042, 1053 (8th Cir. 2011). Based on the record as a whole, the Court concludes that substantial evidence supports Sedgwick's decision to deny Plaintiff's claim for STD benefits and that "a reasonable person *could* have reached a similar decision." Id. at 1050. As a result, Sedgwick did not abuse its discretion in denying Plaintiff's claim. Even under de novo review, the Court upholds Sedgwick's decision. The Court will, therefore, grant Sedgwick's motion for summary judgment on Plaintiff's ERISA claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Sedgwick Claims Management Services, Inc.'s Motion for Summary Judgment [30] is **GRANTED**.

An appropriate Judgment will accompany this Memorandum and Order.

Dated this 9th day of November, 2021.

*John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**